IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:20-CV-239-BO

| | | |
|---|---|---|
| FIRST PROTECTIVE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | O R D E R |
| JEFFREY BROWN AND CATHERINE BROWN, | ) ) ) ) | |
| Defendants. | ) | |

This cause comes before the Court on plaintiff's motion to enforce settlement agreement and defendants' motion for judgment on the pleadings. For the following reasons, both motions are denied.

BACKGROUND

Plaintiff issued a homeowners policy to defendants Mr. Jeffrey and Ms. Catherine Brown, the owners of a vacation home located at 2311 Emerald Dr., Emerald Isle, North Carolina 28594. The policy had effective dates of August 30, 2018 to August 30, 2019 and provided for certain coverages, including Coverage A (Dwelling) and Coverage C (Personal Property). On September 18, 2018, defendants notified plaintiff of damage incurred at the property from Hurricane Florence on September 14, 2018. Plaintiff hired an independent field adjuster to inspect the property on September 26, 2018, and plaintiff issued an initial payment of $74,550.18 to defendants on November 5, 2018. Plaintiff subsequently ordered a second inspection of the property, and after defendant submitted additional invoices, issued supplemental payments on November 7, 2018, in the amount of $15,154.10; on November 14,

2018, in the amount of $16,091.53; and on December 1, 2019, in the amounts of $19,373.07 and $1,989.16. In total, plaintiff made $127,158.04 in payments under Coverage A and C of the policy to defendants.

Unsatisfied by the amount they received from plaintiff for their property damage claim, defendants hired StormPro Consultants, LLC on September 26, 2019 to assist them in handling their insurance claim. According to defendants, StormPro provided an estimate in October 2019 of $305,620.97 for the total cost to mitigate and repair the property under Coverage A of the policy. Plaintiff sent a letter and supplemental estimate dated December 17, 2019 to defendants indicating that plaintiff would make a payment of $56,841.56 and that its investigation of the loss was complete. On January 31, 3030, defendants notified plaintiff that they intended to invoke their right to appraisal as set out in the policy if they did not receive a response regarding a subsequent submission on or before February 13, 2020. On February 7, 2020, plaintiff contacted defendants through StormPro and indicated that plaintiff's management determined that it paid appropriately on defendants' claim. StormPro, on behalf of defendants, requested that plaintiff release depreciation. On February 10, 2020, plaintiff sent a reservation of rights letters to defendants indicating that there was a dispute as to the amount of loss.

On May 7, 2020, Mr. Ron Hicks of StormPro contacted plaintiff "one last time as a courtesy," asking for $25,000 in new money as an "amount to settle" the dispute. On May 8, 2020, Mr. Dave Fasking, an employee of plaintiff, sent a proposed release for defendants. On May 19, 2020, in response to plaintiff's attempts to follow up on the status of the release, Mr. Hicks stated that he would have to check with defendants about the release. On May 21, 2020, further communication took place during which, according to defendants, defendants formally rejected the proposed release or, according to plaintiff, defendants attempted to unilaterally

2

terminate the settlement agreement between the parties. In the following months, the parties considered to discuss the status of the claim.

On July 6, 2020, plaintiff advised defendants that they were obligated to sit for an examination under oath pursuant to the terms of the policy. On July 7, 2020 defendants sent an appraisal demand form to plaintiff invoking the appraisal policy, and plaintiff agreed to participate in the appraisal process on July 27, 2020. Appraiser Scott Mauldin and Appraiser Lavonzel Williams performed a re-inspection of the property on October 23, 2020 and produced an estimate of the loss. Along with the umpire, Mr. Wesley Barber, they came to an agreement on November 11, 2020 as to the amount of loss for defendants' entire claim and submitted a three-signature appraisal award to plaintiff on November 12, 2020. Defendants notified plaintiff of their intention to enforce the award. Plaintiff then filed the instant lawsuit on December 29, 2020 seeking a declaratory judgment as to plaintiff's rights and obligations under the policy and seeking enforcement of the contract and/or settlement between the parties. Defendants filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair claim settlement practices against plaintiff on January 19, 2021.

## DISCUSSION

*Motion to Enforce Settlement Agreement*

Plaintiff filed the instant motion to enforce settlement agreement, and the Court had a hearing on the motion on March 17, 2021, at Elizabeth City. A district court has "inherent authority" to enforce a settlement agreement if the court finds that the parties reached a complete settlement and the court can determine the agreement's terms and conditions. *Hensley v. Alcon Labs.*, 277 F.3d 535, 540–41 (4th Cir. 2002) (citation omitted). A motion to enforce settlement agreement "draws on standard contract principles." *Id.* at 540. Under contract law, a valid and

3

enforceable contract exists when there is a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract. *Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp.,* 206 N.C. App. 278, 282 (2010).

Absent an agreement, "a party may demand and receive full judicial process, including a trial," and the district court must deny enforcement. *Hensley,* 277 F.3d at 540–41.

The issue here is whether there was a meeting of the minds on all essential terms of the settlement between the parties. The Court finds there was not. Plaintiff argues that StormPro was acting with actual and apparent authority for defendants in negotiating a settlement agreement. In North Carolina, an agent may bind his principal to the terms of a contract: "(1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." *Morpul Researcbh Corp. v. Westover Hardware, Inc.*, 263 N.C. 718, 721 (1965).

Plaintiff alleges that StormPro had both actual and apparent authority to negotiate and agree to terms of a settlement agreement on behalf of defendants. The Court agrees. StormPro did have authority to enter into a settlement agreement for defendants. However, this does not lead to the conclusion that StormPro did, in fact, enter into a settlement agreement with plaintiff. Instead, the Court finds that Plaintiff never accepted the terms of Mr. Hicks's request for $25,000 in new money. Even assuming, as plaintiff argues, that Mr. Hicks's email was an offer to settle, plaintiff made a counteroffer when it sent a release in response. This counteroffer terminated Mr. Hicks's original offer. *See Cole v. Champion Enters.,* 496 F. Supp. 2d 613, 628 (M.D.N.C. 2007) (finding that, in North Carolina, an original offer has been rejected and ceases to exist when a party makes a counteroffer) (citing *Normile v. Miller*, 312 N.C. 98, 106 (1985)). The five-page release included

4

a variety of provisions never referenced in the May 2020 email exchange and not included in defendant's offer, such as provisions for assignment of benefits, indemnity, severability, confidentiality, and liability. After receiving the proposed release and reviewing these terms, defendants unequivocally rejected the release on May 21, 2020 through StormPro.

*Motion for Judgment on the Pleadings*

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In considering a Rule 12(c) motion, "[c]ourts apply the same standard that is applied to Rule 12(b)(6) motions," but "a court may consider all pleadings, including answers and attached exhibits, instead of reviewing only the complaint." *Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 4:14CV295, 2014 U.S. Dist. LEXIS 164147, at *5 (E.D. Va. 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). Judgment on the pleadings is properly granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters. v. Am. Cas. Co. of Reading*, 442 F.3d 1239, 1244 (10th Cir. 2006) (cited favorably in *Fireman's Ins. Co. v. Glen-Tree Invs., LLC*, No. 7:11-CV-59-D, 2012 U.S. Dist. LEXIS 134064, *10 (E.D.N.C. 2012)). The court "must accept the truthfulness of all factual allegations in a complaint," but it "need not assume the veracity of bare legal conclusions." *Wall & Assocs. v. Better Bus. Bureau of Cent. Virginia, Inc.*, 685 F. App'x 277, 277–78 (4th Cir. 2017) (internal quotations omitted).

I. Declaratory Judgment Action

Plaintiff seeks a declaratory judgment invalidating the appraisal award by asserting that defendants did not comply with a necessary condition precedent to appraisal and that the award is invalid due to impeaching circumstances. Defendants, however, have filed for judgment on the

pleadings, arguing that the undisputed facts within the pleadings reveal that none of the allegations made by plaintiff support invalidating the award. The Court finds that there are still issues of material fact to be resolved and that defendant is not entitled to judgment on the pleadings.

Defendants argue that they should be awarded judgment on the pleadings as to plaintiff's declaratory judgment action because they did not fail to satisfy any conditions precedent to the appraisal process. Defendants argue further that, even if their completion of examinations under oath was a condition precedent to the invocation of appraisal, plaintiff waived its right to rely on that condition by proceeding with the appraisal. Under North Carolina law, when an insurer requests compliance of post-loss duty provisions in an insurance policy, the compliance is a prerequisite to the insured invoking an appraisal provision. *Hailey v. Auto-Owners Ins. Co.*, 181 N.C. App. 677, 687 (2007). The parties must engage in some meaningful exchange of information prior to the insured invoking an appraisal provision, *id.* at 684, since the objective of provisions laying out an insured's duties after loss is "to enable the insurance company to obtain information to determine the extent of its obligation and to protect itself from false claims," *Chavis v. State Farm Fire & Cas. Co.*, 79 N.C. App. 213, 215 (1986), *rev'd on other grounds*, 317 N.C. 683 (1986). However, "an insurer may be found to have waived a provision or condition in an insurance policy which is for its own benefit." *Brandon v. Nationwide Mut. Fire Ins. Co.*, 301 N.C. 366, 370 (1980). An insurer waives a policy provision when there is (1) "knowledge on the part of the insurer of the pertinent facts" and (2) "conduct thereafter inconsistent with an intention to enforce the contract." *Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 575 (2003) (internal citations omitted).

Defendants' final argument that they are entitled to judgment on this issue is that the undisputed facts do not contain a single factual allegation suggesting that the appraisal award is invalid based on fraud, duress, or other impeaching circumstances. However, plaintiff argues that

6

defendants' alleged repeated refusal to sit for examinations under oath prior to appraisal is an impeaching circumstance. In North Carolina, an appraisal award is binding where the relevant appraisal provisions have been followed and there is no evidence of fraud, duress, or impeaching circumstances. *Enzor v. N. Carolina Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545-46 (1996). An impeaching circumstance is a mean, bad, or dishonest act on the part of a party to the appraisal that, at a minimum, has "a bearing on the accuracy or authenticity of the appraisal." *Elledge v. Austin*, No. COA04-1003, 2005 N.C. App. LEXIS 2222, at *13 (2005).

Resolution of the declaratory judgment dispute requires this Court to consider factual disputes. For example, the conflicting allegations by the parties surrounding defendants' failure to complete examinations under oath when scheduled are sufficient to create a factual dispute as to whether defendants' conduct created an impeaching circumstance. Here, plaintiff alleges that defendants unilaterally rescheduled their examinations under oath on two separate occasions, thereby shirking their obligations under the policy, while simultaneously advancing the appraisal process despite plaintiff's express objections. Plaintiff also alleges that defendants failed to provide pertinent documentation prior to the appraisal, as requested in letters from counsel. Defendants deny these allegations and instead assert a multitude of other explanations for rescheduling. The factual dispute over whether bad faith was the reason for rescheduling the examination under oath, in addition to other factual disputes, prevents the Court from granting defendants motion on the pleadings as to the declaratory judgment action.

II. Breach of Contract Counterclaim

In order to prove a breach of contract claim in North Carolina, a plaintiff must establish the existence of a valid contract and breach of the terms of that contract. *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588 (2005). A valid contract requires offer, acceptance, consideration, and a

7

meeting of the minds. *Turner v. Ellis*, 179 N.C. App. 357, 362 (2006). A breach of contract occurs where there is a "non-performance unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." *First Protective Ins. Co. v. Rike*, No. 4:20-CV-124-D, 2021 U.S. Dist. LEXIS 16153, at *26 (E.D.N.C. Jan. 28, 2021) (citations and quotations omitted).

The parties agree that the insurance policy is a contract, and defendants contend that plaintiff breached the terms of the contract by failing to agree that the appraisal award was binding upon the parties and by failing to pay the full amount of loss in the appraisal award. It is undisputed that plaintiff is required to fulfill these obligations under the insurance policy, but there is a dispute as to whether and to what extent these obligations were breached by non-performance. Plaintiff contends that it fulfilled its obligations under the policy to the extent that it was able, and that plaintiff participated in the appraisal in compliance with the policy while simultaneously reiterating its desire to conduct examinations of the defendants before the appraisal award. Plaintiff alleges that the appraisal award is invalid because defendants had not previously submitted to examinations under oath, and that this is a valid reason to excuse its nonperformance.

Defendants' breach of contract arguments and plaintiff's asserted breach of contract defense rely on many of the same arguments as the impeaching circumstance for the appraisal process. Since the Court has already determined that there are factual disputes over whether there was bad faith in the rescheduling of the examinations under oath, the Court also finds that there are factual disputes that prevent the Court from determining at this time whether plaintiff breached the contract between the parties. Therefore, because there are material facts in dispute, defendants' motion for judgment on the pleadings with respect to their breach of contract counterclaim fails.

8

Case 4:20-cv-00239-BO   Document 22   Filed 06/17/21   Page 8 of 11

III. Breach of Implied Covenant of Good Faith and Fair Dealing Counterclaim

"Under North Carolina law, every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38 (2018) (internal quotations omitted). To state a claim for breach of good faith and fair dealing, "a plaintiff must plead that the party charged took action which injured the right of the other to receive the benefits of the agreement, thus depriving the other of the fruits of the bargain.'" *McDonald v. Bank of New York Mellon Trust Co.*, 259 N.C. App. 582, 597 (2018) (internal quotations omitted). The North Carolina Court of Appeals has held that "[a] defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." *Id.* (citation omitted).

Because there can be no breach of the implied covenant of good faith and fair dealing when there has not been a breach of contract, the Court must first decide whether there has been a breach of contract. As previously states, the Court cannot decide at the judgment on the pleadings stage whether there has been a breach of contract because of factual disputes, and these factual disputes likewise prevent the Court from now determining whether there has been a breach of the implied covenant of good faith and fair dealing. Defendants' motion for judgment on the pleadings fails with respect to this counterclaim.

IV. Unfair Claims Settlement Practices Counterclaim

To establish an unfair and deceptive trade practices claim, a plaintiff must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). "A [v]iolation of any form of conduct listed in N.C. Gen. Stat. § 58-63-15(11) operates as a *per se*

9

instance of unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1. *Lyon v. Serv. Team of Prof'ls (E. Carolina), LLC*, No. COA18-627, 2019 N.C. App. LEXIS 359, at *13 (2019) (citation omitted). Conduct that violates N.C. Gen. Stat. § 58-63-15(11) is an unfair and deceptive act or practice because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Gray*, 352 N.C. at 71. "Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" is conduct listed under the statute. N.C. Gen. Stat. § 58-63-15(11)(f).

Defendants base their unfair and deceptive trade practice claim on allegations that plaintiff "engage[d] in conduct manifesting an inequitable assertion of power or position," *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 9 (1996) (finding that such conduct "constitutes an unfair trade practice"), and violated N.C. Gen. Stat. § 58-63-15(11), including N.C. Gen. Stat. § 58-63-15(11)(f), when it failed to pay the full appraisal award amount within sixty days of the award's entry and for refusing to treat the appraisal award as a final determination of value that would bind both parties. Again, these assertions rely on facts that are in dispute. For example, defendants contend that plaintiff participated in the entire appraisal process without once contending that the appraisal could not properly determine the value of defendants' loss. On the other hand, plaintiff contends that it repeatedly reiterated its request to conduct examinations under oath of defendants as a condition precedent to the appraisal. Based on these disputes, the Court denies defendants' motion for judgment on the pleadings as to this claim.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to enforce settlement agreement [DE 11] defendants' motion for judgment on the pleadings [DE 16] are DENIED.

SO ORDERED, this 16 day of June, 2021.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE